## ROBINETT v. POLLARD.

### November 19, 1836.

*Rule to show cause why the special capias should not be quashed.*

The 24th section of the act of the 13th June, 1836, relative to the commencement of actions, allowing a special *capias* to issue after a summons, does not extend to actions instituted before that act went into operation, viz: 1st September, 1836.

THE facts of this case sufficiently appear in the opinions of the judges. This rule was argued by

*Randall*, for plaintiff.
*F. W. Hubbell*, for defendant.

This action was commenced by summons returnable to December term, 1835.

PETTIT, *President.*—On the 20th day of October, 1836, the plaintiff made and filed of record an affidavit within the terms of the 24th section of the act of 13th June, 1836, entitled " An act relating to the commencement of actions," and issued a special *capias ad respondendum* against the defendant.

The defendant was arrested and gave bail in 6000 dollars, and by his counsel has moved to quash the *capias* upon the ground, that the 24th section of the act of 13th June, 1836, has reference only to personal actions commenced by summons issued after the date on which the law went into operation, viz: 1st September, 1836.

The 24th section (*Stroud's Purdon*, 576) provides " that in any personal action commenced by *summons as aforesaid*, if the plaintiff, his agent or attorney, shall, during the pending of such action, make affidavit to be filed of record, of his cause of action as aforesaid, and that the defendant is about to quit the commonwealth, as the deponent verily believes, without leaving sufficient real estate therein to satisfy the demand, he may have a special *capias ad respondendum* against the defendant," in the form which is set out at length.

The phraseology of this section requires a reference to the pre-

[Robinett v. Pollard.]

ceding parts of the act. The 1st section provides " that personal actions, except in cases where other process shall be especially provided, *shall be commenced* by a writ of summons, which shall be in the following form," &c.

The 2d section directs the mode by which " a writ of summons shall be executed," and in some respects departs from the requisitions in regard to the service of writs of summons under the act of 1724–5. These two sections are intimately connected. The summons by which an action is to be commenced, must be served according to a provision which is an innovation upon the former method, and is therefore clearly and necessarily prospective in its operation. It is only when the action is commenced by summons *as aforesaid*, that is, by a summons whose manner of service is inseparably connected with it in the act, that the special *capias* can be issued on the filing of the appropriate affidavit. The prospective character of the service proves also the prospective character of the writ. This brief view is deemed conclusive. The remaining sections of the law are in perfect harmony with it.

The 89th section repealing all laws inconsistent with this act, and the 90th section directing that the provisions of this act so far as they alter or add to existing laws or customs shall go into effect on the 1st September, 1836, can have full effect given to them, without interfering with suits commenced by summons prior to the 1st September, 1836. As to any such suit, there is nothing *supplied*, nor are any existing laws or customs *altered or added to.*

STROUD, J.—(after stating the facts).

The 24th section alluded to, is in these words: " In any personal action commenced by *summons as aforesaid*, if the plaintiff, his agent or attorney, shall, during the pending of *such* action, make affidavit," &c. The expressions " *action commenced by summons as aforesaid*," and " *during the pending of such action*," show plainly, we think, that the new provision of the *special capias* authorized by this section is restricted to actions instituted since the act itself came into operation. The " *summons as aforesaid*" must mean the *summons* mentioned in the *first* section, and the *action* spoken of as " *such* action" is language of the same limited import.

The 26th section, which was referred to in support of the plaintiff's views, seems to us strong authority for an opposite conclusion. Its language is: "wherever any person who shall have become bail of the defendant in any action, shall, pending the same, assign his effects for the benefit of his creditors, or make application for the benefit of the insolvent laws of this commonwealth, or give bond for such purpose, or shall remove from the commonwealth, or signify an intention so to do, it shall be lawful for the plaintiff in such action to require such defendant, by a rule to be entered by the prothonotary, &c., to find *additional* bail, and in case of his default to issue a *special writ of capias* against him," &c.

By the construction which had been placed on the act of 1725, it was in the power of a plaintiff to exact special bail in actions of *contract* universally, even though the defendant were a freeholder, domiciled amongst us, and without the intention of removing from the state. And numerous cases of this description are now pending. If these should be considered as embraced by the new act, then, by force of this 26th section, *additional* bail may be required on the happening of the contingencies stated in it, notwithstanding by the earlier provisions of the same act the action would not be bailable at all.

The incongruity which would thus arise by giving to the existing law a retrospective operation, induces the notice of a further argument of the plaintiff's counsel. It was said the late act is *remedial*. This is undoubtedly true. But in what respect is it to be so regarded? What part of the *old* law was it designed to alter? Plainly that which by construction of the courts enabled plaintiffs to demand bail almost universally. The new act has abridged this power to an extent which nearly destroys it. Not *one* action of *twenty* can now be commenced by *capias*. Taking into view, therefore, the *remedial* character of the act, the natural interpretation of the language of the 24th section is corroborated in a degree which removes all doubt.

Considerable stress was placed by the plaintiff's counsel upon the last two sections of the act of 13th June, 1836. The *first* of these repeals all former laws *altered* or *supplied* by its provisions, and the *latter* fixes the time when it is to take effect, and of course, when the laws, which it repeals, cease to be in force.

[Robinett v. Pollard.]

That the decisions which have taken place on the effect of a repeal of an old law by virtue of the same language which is contained in the act in question, furnish much reason to apprehend inconvenience and perhaps serious injury in respect to rights founded upon other acts of assembly which have been superseded by some one of the numerous revised acts passed at the last session, may be admitted, see Commonwealth *v.* Beatty, 1 *Watts*, 382. But so far as concerns actions commenced by *summons* prior to September 1, 1836, we do not see that those sections have any operation. The rule must therefore be made absolute.

Rule absolute.